

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Norfolk Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **UNDER SEAL** |
| | ) | |
| v. | ) | Criminal No. 2:19cr  3 2 |
| | ) | |
| ROBERT J. RESH, | ) | 18 U.S.C. § 1349 |
| | ) | Conspiracy to Commit Mail and Wire Fraud |
| Defendant. | ) | (Count 1) |
| | ) | |
| | ) | 18 U.S.C. § 1341 |
| | ) | Mail Fraud |
| | ) | (Counts 2-3) |
| | ) | **SEALED** |
| | ) | 18 U.S.C. § 1343 |
| | ) | Wire Fraud |
| | ) | (Counts 4-5) |
| | ) | |
| | ) | 18 U.S.C. § 1010 |
| | ) | False Statements to HUD |
| | ) | (Counts 6-8) |
| | ) | |
| | ) | 18 U.S.C. § 1014 |
| | ) | False Statements to a Financial Institution |
| | ) | (Counts 9-11) |
| | ) | |
| | ) | 18 U.S.C. § 1028A |
| | ) | Aggravated Identity Theft |
| | ) | (Counts 12-13) |
| | ) | |
| | ) | 18 U.S.C. § 981(a)(1)(C), |
| | ) | 28 U.S.C. § 2461(c), and 21 U.S.C. § 853(p) |
| | ) | Criminal Forfeiture |

<u>INDICTMENT</u>

February 2019 Term – at Norfolk, Virginia

THE GRAND JURY CHARGES THAT:

At all times relevant to this Indictment, unless otherwise stated:

## GENERAL ALLEGATIONS

1.      ROBERT J. RESH ("RESH") is a licensed real estate broker in the Commonwealth of Virginia.  RESH was the owner, president, and principal broker of Resh Realty Corporation doing business as Resh Realty Group ("RRG").

2.      RRG's principal office was located at 512 South Lynnhaven Road, Virginia Beach, Virginia.  At other times, RRG's offices were located on Ballard Court in Virginia Beach and at another location on Lynnhaven Parkway in Virginia Beach.

3.      TowneBank is a financial institution, as defined by Title 18, United States Code, Section 20, with deposits insured by the Federal Deposit Insurance Corporation.

4.      The Federal Housing Administration ("FHA") is an agency within the United States Department of Housing and Urban Development ("HUD").  FHA administers various mortgage insurance programs mandated by the National Housing Act, Title 12, United States Code, Sections 1710-1750.  Under the Single Family Mortgage Insurance Program, FHA insures mortgages made to borrowers for the purpose of purchasing single family homes, or homes of up to four units, where the owner is to reside in one of the units.

5.      Under the Single Family Mortgage Insurance Program, FHA does not make mortgage loans directly to borrowers, but, rather, encourages commercial lenders to make such loans to individual borrowers by insuring those loans in the event of default.  In the event of default and foreclosure, HUD makes the lender whole by paying off the unpaid principal balance, accrued interest, and associated fees.  The property is then conveyed to HUD and

2

becomes part of the Real Estate Owned or "REO" Division. HUD then sells its REO properties to offset the payments it makes to lenders.

6. HUD delegates the sales process to Management and Marketing or "M&M contractors." M&M contractors hire local real estate firms to list the REO properties for sale. As part of the approval process, M&M contractors require the real estate firms to sign a Listing Broker Agreement ("LBA") that contain the following or substantially similar language:

> Except as may be otherwise allowed pursuant to federal law or regulation, no property owned by HUD may be purchased, whether as an owner, occupant, or as an investor, by Listing Broker, nor by any member of the Listing Broker's family by blood or marriage, nor by any business partner or company with which Listing Broker has any beneficial interest of any kind. Further, Listing Broker will not allow the purchase of any HUD owned home, whether as an owner occupant or as an investor, by any employee, agent, associate, independent contractor, subcontractor, or hiree (collectively called "affiliates"), nor by any member of the affiliate's family by blood or marriage, nor by any business partner or company with which the affiliate has any beneficial interest of any kind. Listing Broker agrees to make this policy known in writing to all its affiliates, and to be responsible to periodically reiterate the policy and monitor compliance with it.

7. At various times between October 2010 and May 2017, RESH served as an approved Listing Broker for HUD REO properties. Numerous M&M Contractors hired RRG to provide services to effect the sale of certain HUD REO properties including, but not limited to, providing broker's price opinions, marketing, and listing properties for sale. In exchange, RRG was permitted to collect a commission of up to three percent of the sales price of each property. RESH, as principal of RRG, executed numerous LBAs containing the above-referenced prohibitions on purchasing HUD REO properties.

3

8.       Despite these prohibitions, RESH, engaged in an elaborate scheme to defraud by purchasing HUD REO properties using numerous straw purchasers and limited liability companies that he controlled.

9.       To conceal his involvement in the HUD REO purchases, RESH recruited individuals to participate in this scheme, and along with Conspirator #1, created numerous limited liability companies to facilitate the fraud including, but not limited to:  Recon Ventures, LLC, Frogs Leap, LLC, RRWH Ventures, LLC, R&L Ventures, LLC, K&R Ventures, LLC, R&D Select Partners, LLC, Select Partners, LLC, Key Ventures, LLC, and RJR Holdings, LLC.

10.      In or about October 2011, one M&M Contractor discovered that RESH had violated the LBA by purchasing HUD REO property through a family member.  To resolve this dispute, RESH executed an Affidavit stating under the penalty of perjury his understanding that the Listing Broker Agreement prohibits the "Listing Broker, subcontractors, contractors, age, relatives and affiliated persons or entities … from purchasing, directly or indirectly, or through an interest in a partnership, corporation, joint venture, or other entity, any property owned by HUD."  Nevertheless, RESH continued to purchase HUD REO properties.

11.      On or about October 21, 2011, Conspirator #1 specifically advised RESH that the LBA stated "you may not purchase [HUD] properties directly or indirectly. . . . I am convinced that if the company finds out about a purchase, even if it is an indirect purchase (remember that you can be an equitable owner even if you are not a record title owner) they will cancel your contract. . . .I do not suggest that you purchase HUD property."  Despite this advice, RESH, with the knowingly assistance of Conspirator #1, continued to purchase HUD REO properties.

4

### *HUD REO Property on Chantilly Court in Virginia Beach, Virginia*

12.     On or about August 6, 2014, RESH submitted a sales contract to purchase a HUD REO property located at Chantilly Court, Virginia Beach, Virginia 23451 for $65,100. RESH concealed his involvement in the transaction by submitting the bid in the name of Recon Ventures, LLC and forging the signature of his business partner, Individual #1, on the sales contract. Individual #1 had no knowledge that Recon Ventures, LLC was even purchasing this property.

13.     On or about August 8, 2014, RESH obtained a $1,000 cashier's check to pay the earnest money deposit. Individual #1's name appears in the memo line of the cashier's check despite the fact that Individual #1 did not actually obtain the check and had nothing to do with the purchase of this property.

14.     To facilitate this purchase, RESH submitted an Operating Agreement for Recon Ventures, LLC to HUD that falsely represented that Individual #1 was the 100% owner of the company and included a forged signature for Individual #1. As RESH was well aware, Individual #1 was never the 100% owner of Recon Ventures, LLC and Individual #1 did not sign this Operating Agreement.

15.     On or about August 14, 2014, HUD accepted the contract unaware that RESH was the actual purchaser of the property.

16.     On or about August 14, 2014, RESH sent Individual #2, a close family member, an email that stated: "I have a surprise for you Monday." Shortly thereafter, RESH took Individual #2 to see the condominium located on Chantilly Court that he had arranged to purchase for Individual #2 from HUD.

5

17.     On or about August 14, 2014, at the direction of RESH, Individual #2 executed an Operating Agreement for Frogs Leap, LLC which stated that Individual #2 was the 100% owner of the limited liability company. Individual #2 had nothing to do with the creation of this entity and simply executed the document at the direction of RESH.

18.     On or about September 5, 2014, RESH applied for a $47,000 loan at TowneBank for Frogs Leap, LLC to facilitate the purchase of "investment property" located on Chantilly Court. In support of this loan application, RESH submitted a fraudulently inflated bid and contract for proposed renovation work to the Chantilly Court property. These documents, provided to TowneBank in support of RESH's loan request, also contained the forged signature of TG – the owner of the Contracting Firm hired to perform the renovation work. As RESH was well aware, TG did not sign the inflated bid request or the inflated contract nor give RESH the authority to forge TG's signature on these forms.

19.     On or about September 8, 2014, RESH transferred $20,709.12 from his household account and $40,000 from his RJR Holdings, LLC account to his Recon Ventures, LLC account. All accounts were located at TowneBank.

20.     On or about September 9, 2014, RESH wired $60,709.12 to Conspirator #1's Trust Account at Heritage Bank to facilitate the closing of the fraudulent transaction.

21.     In early September 2014, Conspirator #1's law firm prepared the closing documents for RESH's purchase of HUD's Chantilly Court property. RESH and Conspirator #1 were both well aware that RESH was purchasing this property in contravention of HUD's listing agreement and that they were actively concealing RESH's involvement in the transaction.

22.     On or about September 11, 2014, the transaction closed and RESH arranged for two HUD-1 forms to be completed on the same day. On one HUD-1 settlement statement, Recon Ventures, LLC was listed as the purchaser when, in truth and in fact, RESH was well aware that he was purchasing the Chantilly Court property from HUD. The Secretary of HUD was listed as the Seller for this cash purchase. The contract sales price was for $65,100.

23.     On or about September 12, 2014, Conspirator #1 sent a $60,924.12 interstate wire transfer from his Heritage Bank account in Virginia Beach, Virginia to the United States Treasury in New York, New York with HUD as the beneficiary.

24.     On the second HUD-1 settlement statement, Frogs Leap, LLC was listed as the purchaser of HUD's Chantilly Court property. This second HUD-1 did not identify the "seller," but identified TowneBank as the "lender." This HUD-1 settlement statement only reflected $2,729.42 in "settlement charges" coming from the borrower.

25.     On or about September 11, 2014, at the direction of RESH, Conspirator #1 prepared and signed a "Deed of Gift" transferring the property from Recon Ventures, LLC to Frogs Leap, LLC.

26.     On or about September 12, 2014, at the direction of RESH, TowneBank wired $47,000 – the proceeds of the Frogs Leap, LLC loan – into Conspirator #1's business account located at Heritage Bank.

27.     At the direction of RESH, on September 18, 2014, Conspirator #1 sent $47,000 via interstate wire from his Heritage account to Individual #2's account at BB&T Bank.

28.     One week later, on or about September 25, 2014, at the direction of RESH, Individual #2 cut a check for $45,895 back to Conspirator #1's account at Heritage Bank.

7

29.     On or about October 3, 2014, Conspirator #1 wired the same full amount of the funds ($45,895) back to RESH's account at TowneBank in the name of RJR Holdings, LLC.

### HUD REO Property on Hannah Street in Norfolk, Virginia

30.     Individual #3 is the owner and operator of a restaurant/night club in Virginia Beach, Virginia, a licensed real estate agent who has been associated with RRG, and RESH's friend.

31.     In or about July 2013, RESH and Individual #3 organized RRWH Ventures, LLC. RESH was the 51% owner of RRWH Ventures, LLC and Individual #3 held a 49% ownership interest. The principal offices were located on Ballard Court, a former location of RRG's offices.

32.     On or about March 12, 2014, a TowneBank banking account was opened in the name of RRWH Ventures. RESH and Individual #3 were the only authorized signers on the account. The mailing address associated with the account was RESH's personal address. The telephone associated with the account was RESH's personal cell phone number.

33.     On or about July 26, 2016, a contract was executed in Individual #3's name to purchase a HUD REO property located at Hannah Street, Norfolk, Virginia 23505 for $145,200. RESH caused the contract to be mailed via interstate mail or commercial carrier to HUD.

34.     On or about August 9, 2016, HUD accepted the contract without knowledge that RESH was an intended purchaser.

35.     On or about September 1, 2016, RESH obtained financing for Individual #3's purchase of the Hannah Street property. This purchase and the subsequent renovations completed on Hannah Street were financed, in part, with a $145,750 loan from TowneBank with

8

RESH serving as a borrower on the loan and as a guarantor. In support of this loan application, RESH submitted a fraudulently inflated bid for proposed renovation work for the Hannah Street property.

36.     On or about September 20, 2016, two deposits were made to RRWH Ventures' TowneBank account - an $18,320 transfer from a TowneBank account controlled by Individual #3, and an $18,318.82 transfer from a TowneBank account in the name of Select Partners, LLC, controlled by RESH.

37.     On or about September 20, 2016, RESH wired $36,637.64 from RRWH Ventures' TowneBank account to Conspirator #1's escrow account at Southern Bank, headquartered in Mount Olive, North Carolina.

38.     In or about mid-September, 2016, Conspirator #1 prepared the closing paperwork for this transaction. RESH and Conspirator #1 were both well aware that RESH was purchasing this property in contravention of HUD's listing agreement and that they were actively concealing RESH's involvement in the transaction.

39.     On or about September 20, 2016, Individual #3 closed on the purchase of Hannah Street. As the conspirators well knew, at no time, was HUD aware that RESH was involved in this transaction as an intended purchaser. That same day, Individual #3 conveyed ownership of the Hannah Street property to RRWH Ventures through a deed of gift prepared by Conspirator #1. After the closing, RESH and Conspirator #1 caused the falsified HUD-1 form and other closing documents to be sent to HUD. The conspirators did not send to HUD the deed of gift executed the same day as the closing.

9

40.     On or about February 24, 2017, RRWH resold Hannah Street for $216,500.

41.     On or about February 28, 2017, $52,135.76 was deposited into RRWH Ventures' TowneBank account.

42.     On or about March 9, 2017, two transfers, each in the amount of $25,000 were sent from RRWH Ventures' TowneBank account – one to a TowneBank account controlled by Individual #3, and one to a TowneBank account controlled by RESH.

### HUD REO Property on Segar Street in Hampton, Virginia

43.     In or about March, 2009, RESH organized and registered K&R Ventures, LLC with the Virginia State Corporation Commission ("SCC"). The Articles of Organization filed with the Virginia SCC reflect that RESH was the company's organizer, and its principal office address was on Ballard Court, a former location of RRG's offices.

44.     On or about June 3, 2016, RESH established a TowneBank banking account for K&R Ventures. RESH and Conspirator #2, a close family member, were the only authorized signers on the account. The mailing address associated with the account was a Lynnhaven Parkway address, a former location of RRG's offices. The telephone associated with the account was RESH's cell phone number.

45.     On or about June 29, 2016, RESH, using K&R Ventures to conceal his identity, entered into a contract to purchase a HUD REO property located on Segar Street, Hampton, Virginia 23663 for $106,000. Conspirator #2 executed the purchase contract using a fictitious name.

46.     An Operating Agreement received by HUD, and dated May 1, 2016, stated that the primary purpose of K&R Ventures was the "sale and purchase for investment purposes of

10

residential and commercial buildings, and any other real estate business as the Managers may from time to time deem to be in the best interests of the Company." Furthermore, it fraudulently reflected that Conspirator #2 (who concealed her identity by using her maiden name instead of her legal name) held a 100% membership interest.

47.     On or about July 9, 2016, HUD accepted the contract without knowledge that RESH wholly controlled this transaction and was an intended purchaser.

48.     On or about August 9, 2016, RESH obtained financing for his purchase of the Segar Street property. This purchase and the subsequent renovations completed on Segar Street were financed, in part, with a $115,500 loan from TowneBank with RESH serving as a borrower on the loan and as a guarantor.

49.     On or about August 9, 2016, RESH wired $21,974.21 from a TowneBank account that he controlled to Conspirator #1's escrow account at Southern Bank, headquartered in Mount Olive, North Carolina. These funds – provided by RESH – were used for the down payment to purchase the HUD REO property located on Segar Street.

50.     In or about early August 2016, Conspirator #1 prepared the closing paperwork to enable RESH to purchase the HUD REO property on Segar Street. RESH and Conspirator #1 were both well aware that RESH was purchasing this property in contravention of HUD's listing agreement and that they were actively concealing RESH's involvement in the transaction.

51. ·     On or about August 9, 2016, RESH closed on the purchase of Segar Street. As the conspirators well knew, at no time, was HUD aware that RESH was involved in this transaction as an intended purchaser. After the closing, RESH and Conspirator #1 caused the falsified HUD-1 form and other closing documents to be sent to HUD.

11

52. On or about December 9, 2016, RESH resold Segar Street for $195,000.

53. On or about December 13, 2016, Conspirator #1 wired $58,711.13 in fraud proceeds from Conspirator #1's escrow account to K&R Ventures' TowneBank account.

### *HUD REO Property on South Plaza Trail in Virginia Beach, Virginia*

54. In or about at least November 2010, RESH became the sole member and managing partner of Select Partners, LLC. Since obtaining control over Select Partners, RESH has transferred membership and managerial responsibilities several times between himself and Conspirator #2, his close family member.

55. On or about February 27, 2014, RESH opened a TowneBank banking account in the name of Select Partners. RESH was the only authorized signer on the account. The mailing address associated with the account was the Ballard Court address that RRG previously used. The telephone number associated with the account is a cellular telephone number utilized by RESH.

56. On or about January 26, 2016, RESH, concealing his identity using Select Partners, LLC, entered into a contract to purchase a HUD REO property located on South Plaza Trail, Virginia Beach, Virginia 23452 for $145,000. RESH also provided a $1,450 cashier's check cut on his Select Partners' bank account for an earnest money deposit.

57. An Operating Agreement received by HUD, and dated November 1, 2010, stated that the primary purpose of Select Partners was the "sale and purchase for investment purposes of residential and commercial buildings, and any other real estate business as the Managers may from time to time deem to be in the best interests of the Company." Furthermore, it fraudulently

reflected that Conspirator #2 (who again concealed her identity by using her maiden name instead of her legal name) held a 100% membership interest.

58.     On or about February 3, 2016, HUD accepted the contract without knowledge that RESH wholly controlled this transaction and was the intended purchaser.

59.     On or about February 5, 2016, RESH applied for a $148,207.50 loan at TowneBank to purchase this property on South Plaza Trail.  In support of this loan application, RESH submitted a fraudulently inflated bid and contract for proposed renovation work to the South Plaza Trail property.  Internal TowneBank documents reflect RESH's complete control of the limited liability company: "Select Partners was started by Robert Resh in 2004 for the sole purpose of residential real estate investment.  He purchases homes to flip….He is the 100% shareholder in the LLC."

60.     On or about March 1, 2016, Conspirator #1 prepared the closing paperwork to facilitate RESH's purchase of the South Plaza Trail property.  RESH and Conspirator #1 were both well aware that RESH was purchasing this property in contravention of HUD's listing agreement and that they were actively concealing RESH's involvement in the transaction.

61.     On or about March 1, 2016, RESH closed on this property.  As the conspirators well knew, at no time, was HUD aware that RESH was involved in this transaction as an intended purchaser.  After the closing, RESH and Conspirator #1 caused the falsified HUD-1 form and other closing documents to be sent to HUD.

62.     On or about March 3, 2016, RESH wired $39,231.74 from a TowneBank account that he controlled to Conspirator #1's escrow account.  These funds – provided by RESH – were used for the down payment to purchase the HUD REO property located on South Plaza Trail.

13

63.     On or about March 4, 2016, Conspirator #1 caused an interstate wire totaling

$139,350.49, comprising HUD's proceeds from RESH's purchase of South Plaza Trail, from his

escrow account at Heritage Bank in Virginia Beach, Virginia, to the United States Treasury in

New York, New York, with HUD as the beneficiary.

64.     On or about July 14, 2016, RESH resold the 3509 South Plaza Trail property for

$239,900.

65.     On or about July 15, 2016, Conspirator #1 wired $75,064.61 from his escrow

account to Select Partners' TowneBank account.

14

## COUNT ONE
### (Conspiracy to Commit Mail and Wire Fraud)

1.      The allegations contained in Paragraphs 1 through 65 of the General Allegations section of the Indictment are realleged and incorporated as if set forth fully herein.

2.      From in or about January 2011 through in or about May 2017, in the Eastern District of Virginia and elsewhere, defendant ROBERT J. RESH, Conspirator #1, and Conspirator #2, and others known and unknown, knowingly and intentionally combined, conspired, confederated and agreed to commit the following offenses against the United States:

(a)      Mail Fraud: ROBERT J. RESH, and others known and unknown, having devised a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, did knowingly place and caused to be placed in any post office and authorized depository for mail, any matter and thing whatever to be sent and delivered by the Postal Service; did deposit and caused to be posited any matter and thing whatever to be sent and delivered by any private and commercial interstate carrier; and caused to be delivered by mail and such carrier any matter and thing whatever according to the direction thereon, in violation of Title 18, United States Code, Section 1341; and

(b)      Wire Fraud: ROBERT J. RESH, and others known and unknown, having devised a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communication in interstate commerce writings, signs, signals, pictures, and sounds for the purpose of execution of such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

## THE PURPOSE OF THE CONSPIRACY

3.      The purpose of the conspiracy was for ROBERT J. RESH, and others, to personally profit by serving as a HUD listing broker while also misleading HUD, and other entities, in material ways to purchase HUD REO properties.

## THE WAYS, MANNER, AND MEANS OF THE CONSPIRACY

The ways, manner, and means by which ROBERT J. RESH, and others, sought to accomplish this conspiracy included, but were not limited to, the following:

4.      ROBERT J. RESH, operating through RRG, agreed to serve as a listing broker for HUD to sell HUD REO properties.  As a HUD-approved listing broker, ROBERT J. RESH's obligation was to sell HUD REO properties for a price that would mitigate the losses HUD incurred from foreclosures.

5.      ROBERT J. RESH executed numerous Listing Broker Agreements that contained strict conflict of interest provisions.  In these agreements, ROBERT J. RESH promised HUD that he would not purchase HUD properties.  As ROBERT J. RESH was well aware, this prohibition extended to himself, his family members, his business partners, and his companies.

6.      Despite this prohibition, ROBERT J. RESH recruited numerous straw purchasers – including some family members – through which he purchased numerous HUD REO properties.

7.      ROBERT J. RESH, and others known and unknown to the grand jury, created numerous limited liability companies through which ROBERT J. RESH purchased HUD REO properties.

16

8. ROBERT J. RESH controlled almost every aspect of the fraudulent HUD REO purchases. In almost every case, ROBERT J. RESH located the HUD properties, submitted the bids, provided the earnest money deposits, arranged for TowneBank to fund loans to purchase the properties, provided funds for down payments, arranged for renovations, listed the properties for resale, sold the properties, and split the proceeds of the fraud.

9. ROBERT J. RESH submitted fraudulent and forged documents to HUD to conceal his participation in this scheme.

10. ROBERT J. RESH submitted fraudulent and forged documents to TowneBank to obtain loans to support this scheme.

11. ROBERT J. RESH used other people's identities to obtain additional funds from TowneBank that he retained.

12. ROBERT J. RESH, and those known and unknown, caused mailings in furtherance of this scheme. For example, ROBERT J. RESH mailed and caused to be mailed via interstate mail or commercial carrier to HUD the purchase contracts for these various properties.

13. ROBERT J. RESH, and those known and unknown, caused interstate wirings in furtherance of this scheme. In particular, ROBERT J. RESH caused Conspirator #1 to send payments to HUD, payments to ROBERT J. RESH, and payments to straw purchasers via interstate wire.

14. ROBERT J. RESH sent and received emails in furtherance of the scheme. For example, on or about September 24, 2014, ROBERT J. RESH sent an email about a HUD REO property he intended to purchase stating: "Recon Ventures, LLC has won a bud [*sic*] award from HUD for the property at ... Westport Crescent in Newport News. As with all HUD acquisitions

17

(because of my Fed HUD contract), we will close in [Individual #1's] name and [Conspirator #1] will record a deed of gift over to Recon behind it. The deed of trust as usual will be prepared in [Individual #1's] name."

15.     ROBERT J. RESH engaged in this scheme with numerous HUD REO properties located all around Hampton Roads area of Virginia.

(In violation of Title 18, United States Code, Sections 1349, 1341, and 1343.)

## COUNTS TWO THROUGH THREE
(Mail Fraud)

1.      The allegations contained in Paragraphs 1 through 65 of the General Allegations section of the Indictment and Paragraphs 1 through 15 related to Count One are realleged and incorporated as if set forth fully herein.

2.      On or about the dates set forth below, in the Eastern District of Virginia and elsewhere, for the purpose of executing the above-described scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, and attempting to do so, the defendant ROBERT J. RESH knowingly caused to be delivered by U.S. mail and any private or commercial interstate carrier any matter or thing whatever according to the direction thereon, and at the place at which it was directed to be delivered by the person to whom it was addressed, the following matters:

| Count | On or About Date | Item Mailed |
|-------|------------------|-------------|
| 2 | August 1, 2016 | Purchase contract for ROBERT J. RESH's purchase of HUD REO property located on Hannah Street. |
| 3 | September 24, 2014 | Purchase contract for ROBERT J. RESH's purchase of HUD REO property located on Westport Crescent. |

(In violation of Title 18, United States Code, Sections 1341 and 2.)

19

## COUNTS FOUR THROUGH FIVE
### (Wire Fraud)

1.      The allegations contained in Paragraphs 1 through 65 of the General Allegations section of the Indictment and Paragraphs 1 through 15 related to Count One are realleged and incorporated as if set forth fully herein.

2.      On or about the dates set forth below, in the Eastern District of Virginia and elsewhere, for the purpose of executing the above-described scheme and artifice to defraud and for obtaining money and property by the means of materially false and fraudulent pretenses, representations, and promises, the defendant, ROBERT J. RESH, knowingly transmitted or caused to be transmitted by means of a wire communication in interstate commerce certain writings, signs, signals, pictures, and sounds as follows:

| Count | On or About Date | Item Wired |
|-------|------------------|------------|
| 4 | September 18, 2014 | $47,000 interstate wire from Conspirator #1's Heritage Bank account to BB&T Bank account ending in 2873 |
| 5 | March 3, 2016 | $75,064.41 interstate wire from Conspirator #1's Southern Bank account to the Select Partners TowneBank account ending in 0523. |

(In violation of Title 18, United States Code, Sections 1343 and 2.)

20

### COUNTS SIX THROUGH EIGHT
(False Statements to HUD)

1.      The allegations contained in Paragraphs 1 through 65 of the General Allegations section of the Indictment and Paragraphs 1 through 15 related to Count One are realleged and incorporated as if set forth fully herein.

2.      On or about the dates set forth below, in the Eastern District of Virginia and elsewhere, defendant ROBERT J. RESH, made, passed, uttered, and published a statement knowing the same to be false and altered, forged and counterfeited an instrument, paper and document, and uttered, published, and passed as true an instrument, paper, and document knowing it to have been altered, forged, and counterfeited, for the purpose of influencing an action of the Department of Housing and Urban Development as follows:

| Count | On or About Date | False Statement |
|-------|------------------|-----------------|
| 6 | August 6, 2014 | A forged and falsified sales contract offering to purchase HUD REO Property located on Chantilly Court in Virginia Beach. |
| 7 | September 23, 2015 through October 30, 2015 | An Operating Agreement for Key Ventures, LLC falsely representing that EM was the 100% owner of the limited liability company. |
| 8 | January 26, 2016 through March 1, 2016 | An Operating Agreement for Select Partners, LLC falsely representing that JK (not the individual's true name) was the 100% owner of the limited liability company. |

(In violation of Title 18, United States Code, Sections 1010 and 2.)

## COUNTS NINE THROUGH ELEVEN
(False Statements to a Financial Institution)

1.      The allegations contained in Paragraphs 1 through 65 of the General Allegations
section of the Indictment and Paragraphs 1 through 15 related to Count One are realleged and
incorporated as if set forth fully herein.

2.      On or about the dates set forth below, in the Eastern District of Virginia and
elsewhere, defendant ROBERT J. RESH, knowingly made a false statement and report for the
purpose of influencing the action of TowneBank, a financial institution that was insured by the
Federal Deposit Insurance Corporation, in connection with an application, advance, discount,
purchase, purchase agreement, repurchase agreement, commitment, and loan, as follows:

| Count | On or About Date | False Statement |
|-------|-------------------|-----------------|
| 9 | August 14, 2014 | An inflated and forged description of work and contract for proposed renovations to the Chantilly Court property. |
| 10 | February 6, 2016 | An inflated and forged description of work and contract for proposed renovations to the South Plaza Trail property. |
| 11 | October 1, 2014 | An inflated and forged description of work and contract for proposed renovations to the Westport Crescent property. |

(In violation of Title 18, United States Code, Sections 1014 and 2.)

22

## COUNT TWELVE
### (Aggravated Identity Theft)

1.      The allegations contained in Paragraphs 1 through 65 of the General Allegations section of the Indictment and Paragraphs 1 through 15 related to Count One are realleged and incorporated as if set forth fully herein.

2.      From in or about August 6, 2014 through on or about September 11, 2014, in the Eastern District of Virginia and elsewhere, the defendant, ROBERT J. RESH, did knowingly use, without lawful authority, a means of identification of another person during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit, Title 18, United States Code, Section 1349, knowing that the means of identification belonged to SC, another actual person.

(In violation of Title 18, United States Code, Sections 1028A and 2.)

23

## COUNT THIRTEEN
(Aggravated Identity Theft)

1.      The allegations contained in Paragraphs 1 through 65 of the General Allegations section of the Indictment and Paragraphs 1 through 15 related to Count One are realleged and incorporated as if set forth fully herein.

2.      From in or about August 2014 through in or about May 2017, in the Eastern District of Virginia and elsewhere, the defendant, ROBERT J. RESH, did knowingly use, without lawful authority, a means of identification of another person during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit, Title 18, United States Code, Section 1349, knowing that the means of identification belonged to TG, another actual person.

(In violation of Title 18, United States Code, Sections 1028A and 2.)

24

## FORFEITURE

THE GRAND JURY FURTHER ALLEGES AND FINDS PROBABLE CAUSE THAT:

1.    Defendant ROBERT J. RESH, if convicted of one or more of the violations alleged in counts one through five of the indictment, shall forfeit to the United States, as part of the sentencing pursuant to Federal Rule of Criminal Procedure 32.2, any property, real or personal, which constitutes or is derived from proceeds traceable to the violation.

2.    If any property that is subject to forfeiture above, as a result of any act or omission of the defendant, (a) cannot be located upon the exercise of due diligence, (b) has been transferred to, sold to, or deposited with a third party, (c) has been placed beyond the jurisdiction of the Court, (d) has been substantially diminished in value, or (e) has been commingled with other property that cannot be divided without difficulty, it is the intention of the United States to seek forfeiture of any other property of the defendant, as subject to forfeiture under Title 21, United States Code, Section 853(p).

3.    The property subject to forfeiture under paragraph 1 includes, but is not limited to, the following property:

- Real property and improvements located at 1873 Chantilly Court, Virginia Beach, Virginia;

- Real property and improvements located at 4212 Link Court, Virginia Beach, Virginia;

- Real property and improvements located at 4201 Link Court, Virginia Beach, Virginia;

25

- Real property and improvements located at 2405 Rapidan Court, Virginia Beach,

  Virginia.

A sum of money of at least $1,492,739.00 which represents the proceeds of the offenses charged in counts one through five that the defendant obtained and that, upon entry of an order of forfeiture, shall be reduced to a monetary judgment.

(All in accordance with Title 18, United States Code, Section 981(a)(1)(C), as incorporated by Title 28, United States Code, Section 2461(c); and Title 21, United States Code, Section 853(p).)

Sealed Pursuant to the
E-Government Act of 2002

*United States v. Robert J. Resh*
Criminal No. 2:19cr 32

A TRUE BILL:

REDACTED COPY

_____

FOREPERSON

G. Zachary Terwilliger
United States Attorney

By: Melissa E. O'Boyle

Melissa E. O'Boyle
Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
8000 World Trade Center
101 West Main Street
Norfolk, VA 23510
Phone: (757) 441-6331
Fax: (757) 441-6689
Email: melissa.oboyle@usdoj.gov